PILLSBURY FLOUR MILLS COMPANY *v.* CITIZENS NATIONAL BANK OF PERU, INDIANA, ET AL.

[No. 13,726.  Filed December 21, 1929.  Rehearing denied April 2, 1930.]

*York & Rees* and *Plummer & Plummer*, for appellant.
*Russell J. Wildman* and *Walter S. Bent*, for appellees.

REMY, C. J.—Action by Citizens National Bank of Peru, hereinafter referred to as the bank, against appellant Pillsbury Flour Company, hereinafter referred to as appellant, and appellees New York, Chicago & St. Louis Railroad Company and Max R. Richter. Complaint in a single paragraph, which is, in substance, as follows: In July, 1925, appellant, a milling company at Minneapolis, through Cathcart, its local agent at Peru, received an order from appellee Richter, a resident of Peru, for 200 bags of flour, the price to be $890 cash, upon delivery; that the flour was shipped by rail, along with other orders of flour, to be delivered at Peru; all orders were shipped in the same car and billed to Cathcart at Peru; that, when the shipment was made, appellant drew sight draft to its own order on Richter for $890, payable at appellee bank, draft being attached to the bill of lading; the car containing the flour arrived at Peru August 6, 1925; Richter was without money to pay for the shipment he had ordered, and the bank refused to honor the draft; that Cathcart, who had access

to the car containing the flour, took out the other shipments, and surrendered to the railroad company the bill of lading; that the car was left standing on a side track, and, on the night of August 10, Richter broke into the car and stole and carried away 78 of the bags of flour; that next day, Richter, in company with Cathcart, went to the bank and asked that the draft be honored so that he could complete the transaction and could procure the flour, well knowing that Cathcart and the officials of the bank were at that time ignorant of the fact that he had stolen the 78 bags; that the bank agreed to honor and pay the draft on condition that Richter assign to it his right to purchase and receive the shipment, and on condition that it be delivered to the bank, the bank to sell and deliver same to Richter as he paid for it, to which conditions, all parties agreed; that remittance on the draft was made by the bank before it discovered the shortage; that, upon discovery of the shortage, the bank informed appellant's local agent that it would stop payment on the draft unless appellant, through its agent, would agree to make up the flour shortage; that Cathcart, the local agent so agreed; that Richter paid to the bank the price of the 122 bags of flour, and the same were, by the bank, delivered to him; and that the balance due from appellant to appellee bank is the price of the 78 bags, with interest from date of demand.

The railroad company, in a separate answer, set up that it had delivered the car containing the flour in controversy, with the other shipments, the delivery having been made upon arrival of car at Peru as stated in the complaint, and that its liability thereafter was that of warehouseman.

Appellant filed a separate answer, which was in fact but an argumentative denial. The theory of the answer is that the bank did not, as averred in the complaint, agree to honor or pay the draft on condition that Richter

assign to the bank his right to purchase and receive the same from appellant, and on condition that the flour be sold and delivered by appellant to the bank, to be resold by the bank to Richter; that, on the contrary, Richter borrowed from the bank $850, the purchase price of the flour, and, as security for the loan, Richter assigned to the bank his interest in the flour; that, having received its title from Richter, the bank was in no better position than Richter, and, therefore, cannot recover. To this answer, there was a reply in denial, and a trial resulted in a verdict and judgment for $375.10 in favor of the bank against appellant and Richter, and a finding for the railroad company, and that it recover its costs. Richter did not ask for a new trial and did not appeal.

The action of the trial court in overruling appellant's motion for a new trial is the one alleged error assigned in this court.

Appellant tendered 10, and the railroad company seven instructions, none of which was given. Nineteen instructions were given by the court on its own motion. Appellant relies for reversal upon alleged error in the giving of the court's instruction No. 11, and the refusal to give appellant's tendered instructions Nos. 7, 8, 9 and 10.

In considering the questions raised relative to instructions, it must be borne in mind that the only issue of fact in controversy was as to the source of the bank's title to the flour.

Instruction No. 11 is as follows: "If you find from the evidence that on August 12, 1925, the plaintiff Citizens National Bank of Peru held a sight draft drawn by defendant Pillsbury Flour Mills Company payable to the company's order, with an order of delivery and instructions attached to the draft, that upon payment of the draft to the bank, the bank should deliver the order to Richter, that Richter would become the owner

of the flour so described in the order; and if you further find that Richter, after receiving the order, delivered the flour so received to the Citizens National Bank, then the bank would derive its title to the flour from Richter, and could not recover from defendant Pillsbury Flour Company, nor from defendant railroad company. But, on the other hand, if you find from the evidence, as a part of the transaction it was understood and agreed by and between the Pillsbury Mills Company, through its agent Cathcart, and the bank and Richter, that the title to the flour should pass to the plaintiff bank, and to be stored by the bank in defendant Richter's warehouse, to be removed therefrom only upon payment by Richter to the bank for the flour, then the bank would be held as the owner of the flour, and entitled to recover from defendant Pillsbury Mills Company for any shortage in the amount agreed to be delivered."

It is argued by appellant that this instruction, in effect, directs a verdict for the bank if the jury should find that the title to the flour passed to the bank, even though it should find that the bank acquired title as assignee of Richter. We do not think the instruction bears that construction, but, even if it did, nevertheless, under the issues, and in the light of the evidence, appellant could not have been harmed. The theory of the complaint, briefly stated, is that appellant agreed to deliver all the shipment of flour to appellee bank, that it failed to deliver 78 bags, and that its failure so to do resulted in damages to the bank in an amount equal to the value of the bags not delivered. There is evidence tending to show that Cathcart had authority to bind appellant to deliver the flour to the bank, and there is evidence from which the jury had a right to believe that the bank's payment of the draft was conditioned on agreement of appellant to deliver to it the

flour without regard to title. The court did not err in giving the instruction.

Requested instructions Nos. 7, 8 and 9 are, in effect, mandatory; each failed to take into consideration the fact which, under the evidence, the jury might have found, namely, that there was an express agreement by the parties as to the actual delivery of the flour, and were, therefore, properly refused.

Instruction No. 10, in so far as it correctly stated the law, was covered by instructions given.

Affirmed.